UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tammy J. Shope,                                              Case No. 3:18-cv-1623
*Individually and as Administrator*
*Of the Estate of John Anderson Shope,*
*Deceased,*

                Plaintiff,

    v.                                                       MEMORANDUM OPINION
                                                                         AND ORDER

United States of America,

                Defendant.

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Tammy J. Shope initiated this litigation on behalf of herself and as administrator of the estate of her deceased husband, John Anderson Shope. John tragically died following a medical procedure performed at the Veterans Administration Medical Center in Ann Arbor, Michigan ("VAMCAA"). (Doc. No. 31 at 1-2). I previously ruled that Michigan law applies to Plaintiff's claim under the Federal Tort Claims Act. (*Id.* at 2-4).

Plaintiff seeks summary judgment on the issue of which of two damages caps stated in Section 600.1483 of the Michigan Complied Laws applies to her claim for noneconomic damages. (Doc. No. 34). The government filed a brief in response, (Doc. No. 36), and Plaintiff filed a brief in reply. (Doc. No. 37).

For the reasons stated below, I conclude the lower damages cap contained in § 600.1483(1) applies to Plaintiff's claim.

## II.  ANALYSIS

Section 600.1483 provides, in part:

> (1) In a claim for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the medical malpractice of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to section 6304, in which case damages for noneconomic loss shall not exceed $500,000.00:
>
> . . .
>
> (b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living. . . .

Mich. Comp. Laws § 600.1483.

John underwent a liver biopsy and ablation at the VAMCAA on September 14, 2015. The procedure began at 9:00 a.m., and ended around 12:00 p.m. (Doc. No. 36-1 at 12-14). Approximately 30 minutes later, John became hypotensive and tachycardic. (*Id.* at 11). Testing revealed John had a significant amount of blood in his pleural cavity. Doctors performed an emergency embolization and drained several liters of blood from John's chest. (*Id.*).

He then was admitted to the intensive care unit, where the nursing staff noted John was at a high risk for falls and was "not oriented to [his] own ability". (Doc. No. 34-5 at 4). His condition continued to deteriorate, requiring at least 14 units of blood, medication to increase his blood pressure, and, eventually, intubation. (Doc. No. 36-1 at 4). Dr. Seth Hale, a resident physician, noted John was unable to "move his lower extremities prior to intubation." (*Id.*). After consulting with John's doctors, his family made the decision to withdraw care. John was terminally extubated at 5:55 a.m. on September 15, 2015, and he was pronounced dead at 6:12 a.m. (*Id.*).

Plaintiff argues the higher damages cap applies because John's medical records demonstrate that, following his operation, he "was so cognitively impaired that he was unable to appreciate his

2

lack of mobility and fall risk" and "sustained post-operative paraplegia." (Doc. No. 34 at 6). Defendant contends the lower damages cap applies because Plaintiff has failed to present John's conditions were permanent. (Doc. No. 36 at 7-9).

As Defendant notes, in order for John's conditions to be qualifying injuries for the purposes of § 600.1483(1)(b), Plaintiff must prove those conditions were "expected to last forever." *Young v. Nandi*, 740 N.W.2d 508, 517 (Mich. App. 2007) ("[T]he meaning of the word 'permanent' includes 'existing perpetually; everlasting.'") (quoting *Random House Webster's College Dictionary* (1997)).

The record evidence reveals only that John was suffering from cognitive impairment and an inability to move his lower extremities prior to his death. The evidence does not show that these conditions were permanent. The fact that John "may have temporarily or unnaturally experienced impaired cognitive capacity [or paraplegia] at some point before [his] death does not establish entitlement to the higher noneconomic damages cap." *Young*, 740 N.W.2d at 517.

Instead, the evidence establishes this case is like *Brookshire v. Stier*, in which the Court of Appeals of Michigan reversed the trial court's application of the higher damages cap because "the only evidence that the [decedent's] impairment became permanent is the evidence that the decedent died." 2011 WL 1086568, at *7 (Mich. Ct. App. Mar. 24, 2011); *see also Needham ex rel. May v. Mercy Mem'l Nursing Ctr.*, 2013 WL 5495551, at *15 (Mich. Ct. App. Oct. 3, 2013) (reversing trial court and applying lower damages cap because there was no evidence establishing that, had the decedent lived, decedent's cognitive impairment would have been permanent).

Plaintiff's reliance on *Shinholster v. Annapolis Hospital*, 685 N.W.2d 275 (Mich. 2004), does not change the outcome. (*See* Doc. No. 34 at 5-7; Doc. No. 37 at 5-6). Plaintiff contends *Shinholster* contradicts the "suggest[ion]" in *Young* and *Needham* that "the plaintiff must prove that his or her decedent's impaired cognition would have persisted indefinitely but for the event of death." (Doc. No. 37 at 7). This argument falls short, however, because the *Shinholster* court dealt only with the

3

necessary timing of a qualifying injury, and not the quantum of proof required to prove the decedent suffered a qualifying injury.  *Shinholster*, 685 N.W.2d at 286-89 (holding that § 600.1483 does not require that a plaintiff who has suffered a qualifying injury still must be alive at the time judgment is entered in the plaintiff's favor).

In order to prove John's injuries were qualifying injuries under § 600.1483(1), Plaintiff must prove John's injuries were "permanent."  *Shinholster*, 685 N.W.2d at 285 (quoting Mich. Comp. Laws § 600.1483(1)(a)-(b)).  Plaintiff has not identified any evidence upon which a jury could rely to apply the higher noneconomic damages cap to Plaintiff's claim.  Therefore, I conclude the lower noneconomic damages cap stated in § 600.1483(1) applies.

### III.  CONCLUSION

For the reasons stated above, I deny Plaintiff's motion for partial summary judgment and hold the lower noneconomic damages cap stated in § 600.1483(1) of the Michigan Complied Laws applies in this case.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

4